GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California
VARELL L. FULLER
Assistant Federal Public Defender
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone:   (408) 291-7753
Facsimile:   (408) 291-7399
Email:           Varell_Fuller@fd.org

Counsel for Defendant DEHART

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>MARK DEHART,<br><br>  Defendant. | Case No. 21-mj-71523-MAG<br><br>**OPPOSITION TO GOVERNMENT'S EMERGENCY APPEAL AND MOTION TO REVOKE THE MAGISTRATE COURT'S PRE-TRIAL RELEASE ORDER** |

**INTRODUCTION**

Mark Dehart is charged with one count of being a felon in possession of one spent round and one unspent round of ammunition—two bullets. This is not a presumption case. Under the Bail Reform Act, Mr. Dehart must be released unless no combination of release conditions can guarantee he is not a danger and will appear for court. There is no credible concern here about flight risk, and it is the government's burden to prove by clear and convincing evidence that Mr. Dehart is a danger to the community. On that question, any doubts must be resolved in Mr. Dehart's favor. Here, the government falls short of sustaining its burden. After conducting a bail study, Pretrial Services correctly concluded that any flight or safety risk could be mitigated with suitable conditions and sureties. Pretrial Services recommended that Mr. Dehart be released on an unsecured bond (to be co-

signed by sureties) and placed in a halfway house until a bed is available at the Pathway Society residential treatment program. Following a detention hearing at which the Court heard at length from the parties, as well as from Mr. Dehart's proposed sureties, Judge Cousins, one this Court's most experienced and careful jurists, concluded that the conditions recommended by Pretrial Services will reasonably assure Mr. Dehart's appearance and the safety of the community. While understandably concerned about Mr. Dehart's 2016 prior and reportedly losing his temper at the jail, Judge Cousins adopted Pretrial's recommendation and ordered that Mr. Dehart be released on a $15,000 unsecured bond (to be co-signed by three family members) to a halfway house pending the availability of a bed at the Pathway Society residential treatment program.

Judge Cousins made this decision after carefully weighing the factors set forth in the Bail Reform Act. The Court concluded that the government failed to meet its burden of establishing by clear and convincing evidence that Mr. Dehart poses such a high risk of danger to the community that no combination of conditions can reasonable assure the safety of the community.[1] The government responded by filing an emergency appeal, in which it reiterates the same arguments that Judge Cousins considered and rejected. Because any risk of danger to the community can be reasonably addressed with the conditions imposed by Judge Cousins, this Court should deny the government's motion and affirm Judge Cousins' release order.

## BACKGROUND

This case stems from a parole search conducted on June 29, 2021. On that date, Mr. Dehart reported to his parole office as instructed. A parole search of his vehicle and residence was conducted by Santa Clara Police Officers. Officers searched Mr. Dehart's vehicle. In the trunk, they found a backpack containing baggies with approximately 17.2 and 3.3 grams gross weight grams gross weight of methamphetamine, suspected methamphetamine pipes, and one round of .22 caliber ammunition and one empty .22 caliber casing. The charges alleged in the criminal complaint stem entirely from the spent and unspent rounds of ammunition officers found. No firearms were found on Mr. Dehart or in his vehicle. Mr. Dehart was advised he was in violation of his parole and arrested

---

[1] The government did not move for detention based on flight risk.

without incident.

At the parole office, Mr. Dehart had given the officers his home address on Wainright Drive in San Jose, California. After Mr. Dehart was arrested, officers went to the Wainright address to conduct a further parole search.

The Wainright address is a multi-unit building rented out by multiple tenants. It is similar to a group home. Defense counsel is reasonably informed that other residents have prior felony and misdemeanor convictions, and substance abuse histories. Officers interviewed four tenants about Mr. Dehart's access to the garage. Three of these witnesses were identified by officers using their Santa Clara County mugshot photos. Although the officers used keys obtained from Mr. Dehart to access the locked garage, all of the witnesses explained that Mr. Dehart was the property manager of the residence. The fact that Mr. Dehart, the property manager, possessed keys to the garage is unsurprising. In the garage, officers located two AR-15 style firearms, a handgun, additional ammunition, and various quantities of methamphetamine totaling less than 45.1 gross grams. No evidence was located in Mr. Dehart's room. The firearms were apparently made from polymer kits. There is no evidence the firearms traveled in interstate commerce and therefore may be charged federally. Mr. Dehart was interviewed by officers and denied possessing the items found in the garage. Mr. Dehart was later booked into Santa Clara County Jail and charged with various State offense by the Santa Clara County District Attorney. Defense counsel is reasonably informed that, while in Santa Clara County Jail, Mr. Dehart was housed at a minimum security camp at the Elmwood Facility, where he was a trustee. On September 27, 2021, a criminal complaint was filed in this matter alleging a violation of 18 U.S.C. § 922(g), felon in possession of the two rounds of ammunition found in Mr. Dehart's trunk. Mr. Dehart was taken into federal custody and transferred to Alameda County Jail.

**ARGUMENT**

**I.   The Government Bears the Heavy Burden of Proving by Clear and Convincing Evidence that No Combination of Conditions Can Reasonably Protect the Community**

The Bail Reform Act of 1984 requires a court to release a person charged with an offense pending trial, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the

community." 18 U.S.C. § 3142(b). If the Court does not believe that a person's pretrial release on his or her own recognizance will assure the person's appearance or the safety of the community, the Court should impose the "least restrictive further condition, or combination of conditions" necessary to mitigate the risks of nonappearance or danger to the community. 18 U.S.C. § 3142(c)(1)(B). The government bears the burden of proving by clear and convincing evidence "that a defendant is a danger to any other person or the community." *United States v. Abd Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Barnett*, 986 F. Supp. 385, 403 (W.D. La. 1997) (ordering release of defendants charged with murder for hire). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). With a few exceptions, the Bail Reform Act creates a heavy presumption in favor of pretrial release.[2] *See* 18 U.S.C. § 3142(b); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "Section 3142 does not seek ironclad guarantees." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992). Release is required unless the judge determines that "*no condition or combination of conditions*" will "reasonably assure" the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e) (emphasis added). Detention is meant to be a last resort.

To overcome the presumption in favor of the release, the government must establish by clear and convincing evidence that (1) the defendant poses a danger to the community, and (2) no condition or combination of conditions can reasonably assure the safety of the community. 18 U.S.C. § 3142(e); *see also Motamedi*, 767 F.2d at 1406-07.

In determining whether the government can meet this burden, the Court must consider the following factors: (1) the "nature and circumstances of the offenses charged"; (2) the "weight of the evidence against the person"; (3) the person's "history and characteristics"; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Significantly, the "weight of the evidence" is "the least important of

---

[2] Some charges that create a rebuttable presumption in favor of detention, *see* 18 U.S.C. § 3142(e), but no such charges are present in this case.

OPPOSITION TO GOVERNMENT'S EMERGENCY APPEAL
*DEHART*, 21-MJ-71523-MAG

4

the various factors." *Motamedi*, 767 F.2d at 1408; *Hir*, 517 F.3d at 1090. "[T]he statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). "The Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected." *Motamedi*, 767 F.2d at 1405.

**II.    The Government Has Failed to Prove by Clear and Convincing Evidence that Mr. Dehart Poses a Danger to the Community that Cannot Be Reasonably Addressed Through the Imposition of Appropriate Conditions of Release**

As an initial matter, Mr. Dehart is not charged with a crime of violence.  The only charge against him is a single count of being a felon in possession of two rounds of ammunition – one spent round and one unspent round. The offense is no way violent, did not involve any threats of violence, and is not in any way gang related.

Here, three parole searches were conducted by Santa Clara Police Officers. Officers searched Mr. Dehart's vehicle, residence, and place of work. Mr. Dehart reported to his parole officer as instructed and was cooperative with the search.  The government's argument as to dangerousness is premised almost entirely on a repetitive and selective recitation of reported conduct detailed in police reports from Mr. Dehart's 2016 domestic violence offense, which resulted in his 2019 conviction for three interrelated felony crimes of domestic violence involving his former girlfriend.  That *one* case resulted in Mr. Dehart's only felony convictions. Aside from the 2016 offense, Mr. Dehart no other felony convictions, much less any other crimes of violence.  He does not have multiple arrests, cases, nor convictions for violent offenses nor conduct.  The government attempts, at great length, to extrapolate an overall pattern of violence from two interrelated domestic violence incidents that occurred over five years ago on February 16, 2016 and April 2, 2016.  Mr. Dehart and the victim had been living together for two years and she did not report any other incident of domestic violence.  The government list several threats Mr. Dehart reportedly made during his 2016 offense.  Govt. Mot. at 3:2-9.  However, they were clearly empty threats and the officers arrested him without incident. In fact, in relation to the 2016 offense, Mr. Dehart was hospitalized for injuries he sustained when the

1  victim struck him with a car.[3]

2  The government claims that, "[m]ost troubling, officers discovered a fully functional pipe
3  bomb built by Defendant." Govt. Mot. at 3:11-12. In fact, there is no indication from the police
4  reports that officers ever determined whether the device was "fully functional."  Rather, the reports
5  indicate that the device was detonated and destroyed by the San Jose Police Department bomb squad
6  before it was determined what it actually contained.  And while Mr. Dehart was initially charged with
7  PC § 18710, Possession of a Destructive Device, the charge was later dismissed.

8  The government notes Mr. Dehart's possessed various firearms at the time of his 2016 offense,
9  but Mr. Dehart was not a felon and there was nothing illegal about his possession of those firearms.
10 Prior to his conviction in 2019, his criminal history consisted entirely of misdemeanor vehicle code
11 violations, an infraction, and misdemeanor false impersonation for using his brother's identifying
12 information.  The government notes Mr. Dehart has history of probation violations.  However, those
13 violations were in relation to his prior misdemeanor DUI convictions, and no doubt related to his
14 struggles with substance abuse issues.  The government argues that Mr. Dehart is inherently
15 dangerous and, if released, will reoffend.  However, the government's argument ignores Mr. Dehart's
16 actual criminal history, which clearly includes significant periods of time when Mr. Dehart has
17 incurred no arrest nor criminal convictions.  Nor is there anything in Mr. Dehart's history to suggest
18 that he would pose a danger or reoffend while confined to a halfway house or a residential treatment
19 program.

20 Mr. Dehart remained in pretrial custody for the 2016 case for three years. On May 23, 2019, he
21 was convicted of violating PC § 245(a)(4), assault by force likely to produce great bodily injury; PC
22 § 273.5(a), infliction of corporal injury on a spouse; and PC § 18720, making a destructive device
23 without a permit. He was sentenced to mitigated term of six years (3 years actual), and paroled on

---

[3] Additionally, the government fails to note that, according to the police reports, Mr. Dehart and his former girlfriend were involved in a consensual sadomasochistic sexual lifestyle, which included the use of instruments such as whips, paddles, sticks, hard rubber canes, and other devices used to discipline or punish his former girlfriend, when she misbehaves.  The nature of their relationship in no way justifies Mr. Dehart's subsequent conduct, but does provide context. Additionally, as noted in the Bail Study, Mr. Dehart was under the care of a Psychiatrist before the 2016 offense.  When he committed the offense, he was being treated with unusually high doses of testosterone for depression and anxiety. This likely contributed to his conduct.

May 24, 2019.  In short, Mr. Dehart was sentenced to time served and immediately thereafter paroled. While Mr. Dehart's 2016 offense is concerning, that one conviction is not sufficient to support a clear and convincing finding of dangerousness that would necessitate Mr. Dehart's pretrial detention, particularly in light of the conditions imposed by Judge Cousins.

The government additionally cites the three firearms and "cache" of other concerning items, including magazines about firearms, found during the parole search of the garage as a reason to detain Mr. Dehart.  However, these items were all seized and are now in law enforcement custody.  There is no evidence that Mr. Dehart, if released, has access to additional firearms or dangerous items, and the government will certainly not return the seized items to him.  Even assuming arguendo that Mr. Dehart possessed everything in the garage, there is no evidence he did anything more than simply possess the items.

With respect to his performance on parole, Mr. Dehart had been on parole for approximately two year prior to the alleged offense.  He has no history of parole violations, other than the instant offense.  His parole officer notes he has been compliant while on parole, other than failing to take his required domestic violence courses.  There is absolutely no evidence Mr. Dehart has ever violated the protective order by contacting his ex-girlfriend since his release in 2019.  That fact is significant because it rebuts the government argument that Mr. Dehart is an inherently dangerous and vengeful person and incapable of complying with conditions of release.

Mr. Dehart's personal history and characteristics lend further support to affirming Magistrate Cousin's release order.  Mr. Dehart was involved in a motorcycle accident in 2009 and hospitalized for two weeks.  According to his mother, he suffered a Traumatic Brain Injury (TBI). It is notable that Mr. Dehart's contacts with the criminal justice system increased after that 2009 accident and injury.  Mr. Dehart became a different person after his TBI, as is all too common with this type of injury. His TBI was likely a factor when he reportedly lost his temper in custody.  He has a history of mental health issues, including depression and anxiety for which he has previously received treatment.  His mother admittedly struggled with alcohol addiction during his childhood and Mr. Dehart's biological father physically and mentally abused him.  Mr. Dehart has a significant substance abuse history, which no doubt is interrelated to the abuse and alcoholism he experienced in

childhood. His criminal history is also clearly related to his substance abuse issues, which may be mitigated by placement in a residential drug treatment. Mr. Dehart should be commended for his candor with Pretrial Services about his substance abuse history, including at the time of the alleged offense, as well as his willingness to seek and participate in treatment. With respect to Mr. Dehart's physical condition, he is in poor health. He walks with a cane, has kidney problems, which causes his legs to swell, and he has the aforementioned TBI. His work history provides additional support for release. Mr. Dehart has an impressive and demonstrated work history as a motorcycle mechanic, including at the time of the alleged offense. Mr. Dehart is 44 years old and a lifelong resident of the South Bay. He has the support of his family who has signed on the bond. The sureties are unquestionably financially viable and solid. Mr. Dehart's personal history and characteristics support Judge Cousin's release order.

Finally, the government argues Mr. Dehart should be detained because its preliminary guideline calculation is high and there is a risk of non-appearance. Govt. Mot. at 13:5-7; 14:14-16. However, the government did not move to detain Mr. Dehart as a flight risk during the detention hearing. The government's belated assertion is little more than conjecture and not a basis to detain Mr. Dehart. The defense respectfully disagrees with government counsel's guideline calculation and submits it greatly overstates Mr. Dehart's actual exposure at sentencing. Mr. Dehart has no history of failure to appear. Additionally, Mr. Dehart is indigent, has lived his entire life in the Bay Area, does not possess a passport, has no history of extensive international travel, and does not have apparent resources to flee.

### III. The Conditions Imposed by Judge Cousins Are Sufficient to Reasonably Assure the Safety of the Community

At the outset, the defense notes that Judge Cousins' release order and Pretrial Services' release recommendation, based on the facts presented in this case, is neither extraordinary nor unusual. Defendants with far more significant criminal histories of violent offenses, including prior prison commitments, have been routinely released on similar conditions as those imposed here. Judge Cousin imposed a series of strict conditions on Mr. Dehart. Mr. Dehart's mother, brother and sister have signed on an unsecured bond of $15,000. Most significantly, Mr. Dehart will not be

unsupervised.  He will initially be placed in a halfway house, then transferred to a residential treatment facility. Mr. Dehart will be under dual supervision by United States Pretrial Services and California State Parole. If he were to violate his pretrial release by committing a new offense, which is the crux of the government's argument, he will face a parole and pretrial release violation. This is a significant disincentive.  He will be subject to drug testing.  He will receive intensive substance abuse counseling in a residential setting for no less than 90 days.  He will also be on lockdown for a time while in residential treatment.  Were he to leave without authorization, a warrant would no doubt immediately issue for his arrest. Moreover, Mr. Dehart will receive mental health counselling and treatment.  Additionally, as practical matter, Mr. Dehart has no incentive to make matters worse by committing a new offense and/or violating his release conditions. To the contrary, Mr. Dehart fully understands this is his one opportunity to turn his life around and demonstrate post offense rehabilitation and mitigate any potential sentence the court may impose, in the event that he is convicted.  The release conditions set by Judge Cousins are carefully tailored to address Mr. Dehart's core substance abuse and mental health issues, which undoubtedly are the most significant factor in any risk of danger he may pose to the community.

     The government argues that because Mr. Dehart already had a parole condition prohibiting him from possessing firearms, he will necessarily not abide by a similar pretrial release condition. The government's argument suggest the Court should detain any parolee or defendant already prohibited from possessing a firearm, whenever the government alleges they violated 18 U.S.C. § 922(g). The government's logic is flawed. The government argues Mr. Dehart is dangerous because he manufactured the firearms they alleged he possessed.  It is a farfetched notion indeed that Mr. Dehart could manufacture and possess new firearms in a halfway house or at a residential drug treatment facility.  At bottom, the government has failed to meet its high burden to establish by clear and convincing evidence that the defendant is a danger to the community and no combination of conditions may be set to mitigate the risk of dangerousness, and Judge Cousins' release order should be affirmed.

     ///

**CONCLUSION**

Pretrial release in non-capital cases "should be denied only for the strongest of reasons." *Motamedi*, 767 F.2d at 1407 (citation omitted). Here, the government has not met its burden of demonstrating that no combination of release conditions would reasonably assure the safety of the community. For all these reasons, Mr. Dehart respectfully requests that the Court affirm Judge Cousins' release order.

Dated:   October 5, 2021

Respectfully submitted,

GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California

           /S
VARELL L. FULLER
Assistant Federal Public Defender